UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:04CV-P113-M

**JERRY HONORABLE**                                                                              **PLAINTIFF**

v.

**DAVID OSBORNE**, *et al.*                                                                       **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

The plaintiff, Jerry Honorable, filed this *pro se* civil rights action under 42 U.S.C. § 1983 ("§ 1983"). This matter is before the court on Defendant Chad Payne's motion for summary judgment (DN 21).[1] For the reasons set forth below, the court will grant the motion, dismiss the action, and grant judgment in favor of this defendant

### I. BACKGROUND AND SUMMARY OF ARGUMENTS

**A. Procedural background**

On August 13, 2004, the plaintiff initiated a civil rights action against four employees of the Daviess County Detention Center ("Detention Center"). By prior memorandum opinion and order, this court dismissed all claims with the exception of the plaintiff's Eighth Amendment excessive force claim against Defendant Chad Payne, a deputy at the Detention Center, in his individual capacity (DNs 8, 9, and 10). After a period of discovery, the defendant moved for summary judgment. The plaintiff failed to file a response, and the matter stands ripe for review.

**B. Factual background**

According to the plaintiff's verified complaint, he alleges that Defendant Payne used excessive force during a cell transfer. The plaintiff claims that he complied with orders to turn

---

[1] The defendant's motion for an extension of time within which to file the dispositive motion (DN 20) will be granted *nunc pro tunc*.

around and place his hands behind his back but that the defendant shot him in the back with a taser gun for no reason. While the plaintiff "was down" (presumably on the floor), the plaintiff claims that the defendant purportedly recharged his taser gun and shot the plaintiff again.

In support of the motion for summary judgment, the defendant provides ample evidence of problem behavior exhibited by this plaintiff during his incarceration at the Detention Center. For the entire time that the plaintiff was incarcerated at this institution, Deputy Jailer Chester Freels avers that the plaintiff posed "disciplinary problems" and was moved at least five times because of his disruptive behavior (DN 21, Freels Aff.). The plaintiff arrived at the Detention Center on April 2, 2004, and within two weeks of his entry, he was moved to another cell and placed in isolation for "inciting problems" in his cell (DN 21, Ex. 2, Inmate Tracking/Movements). A few weeks later, he was again moved because of conflict with a cell mate. Less than a month later, he was moved to another cell because of a conflict with his cell mate. Because of a disciplinary problem, he was again reassigned to another cell just two weeks prior to the incident with Defendant Payne at issue in this case.

The evidence shows that the plaintiff frequently threatened to harm other inmates if he were required to share a cell (DN 21, Ex. 1, Inmate Incident History), and he threatened to murder staff if he found the staff person on the street. *Id.* Specifically, on the date that the defendant purportedly used excessive force, Deputy Freels overheard the plaintiff threaten Defendant Payne with physical harm by promising that "when he had the opportunity he would get Deputy Payne and would then be facing a murder charge." (DN 21, Freels Aff.).

On July 31, 2004, the defendant informed the plaintiff of the need to move to another cell. The plaintiff had been placed in an isolation cell because of disciplinary problems but

needed to be moved to make way for another inmate (DN 21, Payne Aff.)  The plaintiff refused to comply with the defendant's orders to pack his belongings, and instead "firmed up his muscles and made fists in both hands." *Id.*  The plaintiff did back into his cell but otherwise refused to obey the orders. *Id.*  He refused to place his hands behind his back even after the defendant warned him that he would use the taser. *Id.*  After the plaintiff refused a second time, the defendant fired the taser gun, striking the plaintiff in the front left shoulder and lower left abdomen (DN 21, Inmate Incident History).  This taser usually causes a temporary paralysis of a muscle without causing injury or pain, but in the plaintiff's case it did not have the complete effect as it only caused him to sit on the ground (DN 21, Payne Aff.).  When the plaintiff continued to clench his fists and disobey orders, the defendant fired the taser a second time at which point the plaintiff became compliant.  At least one other officer observed the incident between the parties and supported the defendant's version of events (DN 21, Haynes Aff.).

## II.  STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the procedure for granting summary judgment.  It provides that

> the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment is appropriate, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings to get to the jury.  Rather, the burden then shifts to the nonmovant to bring forth

significant probative evidence which shows that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). Rule 56(e) specifically provides, in part:

> ...When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*See also, Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476 (6th Cir. 1989) (In responding to a proper motion for summary judgment, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment'").

The plaintiff failed to file a response to the defendant's motion for summary judgment. The court must, nevertheless, consider the substantive arguments proffered by the defendant to determine if he has met his burden. *Carver v. Bunch*, 946 F.2d 451 (6th Cir. 1991) (trial court abused its discretion by dismissing complaint, based on failure to comply with local rule requiring submission of brief in opposition to motion to dismiss within 15 days of date of service of brief). "The movant always bears this burden regardless if an adverse party fails to respond." *Id.* at 455 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 161 (1970)). Finally, while the plaintiff did not file an opposing memorandum, his verified complaint alone may be sufficient to create a genuine issue of material fact with respect to an element of proof. *Williams v. Browman*, 981 F.2d 901, 904-05 (6th Cir. 1992) (noting that under 28 U.S.C. § 1746 "a verified complaint [has] the same force and effect as an affidavit and [can] give rise to genuine issues of material fact").

### III. ANALYSIS

The Eighth Amendment protects inmates from the unnecessary and wanton infliction of pain by correctional officers, *Whitley v. Albers*, 475 U.S. 312 (1986), regardless of whether an inmate suffers serious injury as a result. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Officers are permitted to use force reasonably "in a good-faith effort to maintain or restore discipline," but force is not to be used "maliciously and sadistically to cause harm." *Id*. at 7. Yet, not every "malevolent touch by a prison guard gives rise to a federal cause of action," *Hudson,* 503 U.S. at 9 (quoting *Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973)), and the Eighth Amendment excludes "*de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" In fact, prison officials may use physical force in the form of tasers in order to compel obedience by inmates. *Drummer v. Luttrell*, 75 F.Supp.2d 796 (W.D. Tenn. 1999) (citing *Caldwell v. Moore*, 968 F.2d 595 (6th Cir. 1992) which held a police officer's use of a stun gun and straight jacket to subdue the inmate's escalating and violent behavior did not violate the Eighth Amendment)). However, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Id.*

In determining whether the use of force violates the Eighth Amendment, this court must consider the following factors: (1) the extent of the injury the inmate suffered; (2) the need for the force's application; (3) the relationship between the need for the force and the amount of force used; (4) the threat perceived by the officer using force; and (5) any efforts made to temper the severity of the officer's forceful response. *Combs v. Wilkinson*, 315 F.3d 548 (6th Cir. 2002). "Because prison officials 'must make their decisions in haste, under pressure, and

5

frequently without the luxury of a second chance,' we must grant them 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Hudson*, 503 U.S. at 6).

      Here, the uncontroverted evidence shows that this particular plaintiff posed a security issue and disciplinary problem during the entire time he was incarcerated at the Detention Center. He was frequently the subject of disciplinary actions and threatened physical harm to both inmates and staff alike. These were the circumstances known by the defendant when the incident under question occurred. During that encounter, the plaintiff repeatedly disobeyed the defendant's commands to gather his belongings for a cell transfer. It was only after these repeated refusals combined with the plaintiff's advancing and threatening behavior did the defendant resort to the use of force. When the first taser shot failed to mobilize the plaintiff, the defendant shot a second time at which point the plaintiff's movements were secured. No further force was used against him. There is no evidence that the plaintiff suffered an injury as a result of the situation. And, it is quite evident to this court that force was needed to address the plaintiff's threatening if not escalating bad behavior. In a situation such as this, the court must lend substantial deference to the defendant's decision to use the taser in the first instance, especially when faced with an inmate who repeatedly threatened the lives of others. The court therefore concludes that this incident reflected the defendant's good-faith effort to restore discipline and does not reflect a malicious or sadistic use of force to cause harm. Thus, under these circumstances, the defendant did not violate the plaintiff's constitutional rights.

## IV.  CONCLUSIONS AND ORDERS

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant Chad Payne's motion for an extension of time within which to file his dispositive motion (DN 20) is **GRANTED** *nunc pro tunc*.  And, his motion for summary judgment is **GRANTED**.  The court will enter judgment in favor of Defendant Payne.

Date:

cc:     Plaintiff *pro se*
        Counsel of Record
        4414.002